IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 21-CV- |
| $5,230,918.26 IN UNITED STATES CURRENCY SEIZED FROM TD BANK ACCOUNT # 432-9634011, | : | |
| $542,529.50 IN UNITED STATES CURRENCY SEIZED FROM NUVEI TECHNOLOGIES, | : | |
| | : | |
| $20,020.00 IN UNITED STATES CURRENCY, | : | |
| $1,190.00 IN UNITED STATES CURRENCY, | : | |
| $20,850.00 IN UNITED STATES CURRENCY, | : | |
| $80,000.00 IN UNITED STATES CURRENCY, | : | |
| $62,920.00 IN UNITED STATES CURRENCY, | : | |
| $294,971.33 IN UNITED STATES CURRENCY SEIZED FROM BANK OF AMERICA ACCOUNT # 3250 9092 0626, | : | |
| | : | |
| $446,428.56 IN UNITED STATES CURRENCY SEIZED FROM BANK OF AMERCIA ACCOUNT # 3251 0986 9791, | : | |
| | : | |
| $173,250.00 IN UNITED STATES CURRENCY SEIZED FROM F&A FEDERAL CREDIT UNION ACCOUNT # 639700, and | : | |
| | : | |
| MISCELLANEOUS VEHICLES SEIZED FROM BILL OMAR CARRASQUILLO, | : | JURY TRIAL DEMANDED |
| Defendants In Rem. | : | |

## COMPLAINT FOR FORFEITURE IN REM

The plaintiff, United States of America, by its attorneys, Jennifer Arbittier Williams, Acting United States Attorney for the Eastern District of Pennsylvania, Sarah L. Grieb, Assistant United States Attorney, and David Weisberg, Special Assistant United States Attorney, brings this complaint in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure and alleges the following:

## NATURE OF THE ACTION

1.      This is a civil action in rem to forfeit and condemn to the use and benefit of the United States of America certain United States currency seized from various accounts and places (hereinafter referred to collectively as the "Defendant Currency") and numerous motor vehicles (hereinafter referred to collectively as the "Defendant Vehicles"). The Defendant Currency and the Defendant Vehicles are hereinafter referred to collectively as the "Defendant Property."

2.      The Defendant Currency that is subject to forfeiture is more specifically identified as follows:

(a)      $5,230,918.26 in United States (hereinafter "U.S.") Currency seized from TD Bank Account # 432-9634011, in the name of Bill Omar Carrasquillo;

(b)      $542,529.50 in U.S. Currency seized from Nuvei Technologies, which Nuvei Technologies had been holding for the benefit of "Gears Server;"

(c)      $20,020.00 in U.S. Currency seized on November 20, 2019, from North Hope Street, Philadelphia, Pennsylvania;

(d)      $1,190.00 in U.S. Currency seized on November 20, 2019, from Lorimer Avenue, Huntingdon Valley, Pennsylvania;

(e)      $20,850.00 in U.S. Currency seized from a 2020 Bentley Continental VIN # SCBCG2ZG1LC074750, registered to and in possession of Bill Omar Carrasquillo;

(f)     $80,000.00 in U.S. Currency seized from a 2018 Mercedes Benz AMG VIN # WDD7X8KB9KA001903, registered to Claudio Roman, Jr. and in possession of Bill Omar Carrasquillo;

(g)     $62,920.00 in U.S. Currency seized on November 20, 2019, from Terradell Street, Pico Rivera, California 90660;

(h)     $294,971.33 in U.S. Currency seized from Bank of America Account # 3250 9092 0626, in the name of "Jesse Daniel Gonzales Sole Prop DBA GT Subscriptions;"

(i)     $446,428.56 in U.S. Currency seized from Bank of America Account # 3251 0986 9791, in the name of "Jesse Daniel Gonzales Sole Prop DBA GT Subscriptions;" and

(j)     $173,250.00 in U.S. Currency seized from F&A Federal Credit Union Account # 639700, in the name of Jesse Gonzales and Jennifer L Gonzales.

3.      The Defendant Vehicles that are subject to forfeiture are more specifically

identified as follows:

(a)     One 2019 Jeep Wrangler, VIN # 1C4HJXEG6KW570874;

(b)     One 2018 Dodge Commercial ProMaster 2500 159" W.B. High Roof, VIN # 3C6TRVDG7JE148833;

(c)     One 2020 Lamborghini Huracan, VIN # ZHWUF4ZF9LLA12725;

(d)     One 2019 Suzuki Motorcycle, VIN # JS1SK44A0K7101007;

(e)     One 2019 Chevrolet Camaro, VIN # 1G1FH1R79K0108119;

(f)     One 2018 Dodge Durango, VIN # 1C4SDJGJ4JC416019;

(g)     One 2019 Suzuki DRZ400 Motorcycle, VIN # JS1SK44A3K7100952;

(h)     One 2019 Yamaha 700R four wheel off road vehicle, VIN # 5Y4AM8631KA104297;

(i)     One 2020 Jeep Gladiator, VIN # 1C6JJTBG2LL101726;

(j)     One 2019 Dodge Challenger, VIN # 2C3CDZL9XKH591151;

(k)     One 2018 Suzuki DRZ400 Motorcycle, VIN # JS1SK44A9J2102474;

3

(l)     One 2017 Ford F350 truck, VIN #1FT8W3DT9HED56274;

(m)     One 2019 Can-Am Ryker, VIN # 3JB2FEG49KJ002752;

(n)     One 2019 Audi A7, VIN # WAUS2AF24KN105368;

(o)     One 2018 KTM 1290 Super Duke Motorcycle, VIN #
VBKV39400JM987624;

(p)     One 2019 Ford Mustang, VIN # 1FA6P8TH2K5180423;

(q)     One 2019 Acura NSX, VIN # 19UNC1B0XKY000173;

(r)     One 2015 Lamborghini Huracan, VIN # ZHWUC1ZF4FLA02602;

(s)     One 2019 Lamborghini Aventador, VIN # ZHWUV4ZD0KLA07980;

(t)     One 2018 Jeep Grand Cherokee, VIN # 1C4RJFN91JC405394;

(u)     One 2019 Mercedes Benz GLE Class Utility AMG Sports Coupe, VIN #
4JGED6EB4KA139824;

(v)     One 2020 Toyota Supra, VIN # WZ1DB4C05LW022111;

(w)     One Bentley Continental GT / SuperSport Coupe, VIN #
SCBCG2ZG1LC074750;

(x)     One Jeep Grand Cherokee Trackhawk 4WD 6.2L V8 Supercharged, VIN
# 1C4RJFN93JC224779;

(y)     One 2016 Ford Mustang, VIN # 1FA6P8CF0G5319034;

(z)     One 2016 Dodge Charger, VIN # 2C3CDXL9XGH312311;

(aa)     One 2017 Chevrolet Tahoe, VIN # 1GNSKDEC8HR228971;

(bb)     One 2019 Honda Civic, VIN # SHHFK8G70KU200613;

(cc)     One 1996 Chevrolet Caprice, VIN # 1G1BL52P0TR122129;

(dd)     One 2020 BMW M8, VIN # WBSAE0C00LBM08405;

(ee)     One 2019 Chevrolet Corvette, VIN # 1G1YY2D77K5104515;

4

(ff)     One 2019 Dodge Ram, VIN # 1C6SRFHT8KN533937;

(gg)    One Backdraft Roadster Coupe, VIN # AE9BMAAH3H1MT1025;

(hh)    One 2016 Dodge Challenger, VIN # 2C3CDZC91GH113370;

(ii)     One Mercedes Benz GT63C4S, VIN # WDD7X8KB9KA001903;

(jj)     One Dodge Grand Caravan SE, VIN # 2C4RDGBG5KR751876;

(kk)    One 2018 Polaris Outlaw, VIN # RF3YAK05XJT065024;

(ll)     One 2019 Polaris Ranger XP with Plow, VIN # 4XARRW990K8546570;

(mm)   One 2019 Yamaha 50 Child's Motorcycle, VIN # LBPCA0230K0013324;

(nn)    One 2020 Yamaha PW50, VIN # JYA3PT136LA028317;

(oo)    One 2018 KTM 690 Duke, VIN # VBKLDV401JM714429;

(pp)    One 2019 Yamaha Raptor ATV, VIN # RF3AB1131KT004006;

(qq)    One 2019 Honda 110 Motorcycle, VIN # LALJE024XK3101900;

(rr)     One 2019 Polaris RZR ATV, VIN # RF3YAV171KT029290;

(ss)     One 2019 Honda TRX ATV, VIN # 1HFTE2733K4801310;

(tt)     One 2019 Honda 110 Motorcycle, VIN # LALJE0245K3102145;

(uu)    One 2019 KTM 790 Duke, VIN # VBKTU6406KM739334;

(vv)    One 2019 KTM 390 Duke Motorcycle, VIN # MD2JPJ401KC216497;

(ww)   One 2019 KTM 390 Duke Motorcycle, VIN # MD2JPJ402KC206710;

(xx)    One 2018 Honda CTX700N Motorcycle, VIN # JH2RC6840JK300174;

(yy)    One 2019 Honda Rebel 500 Motorcycle, VIN # MLHPC5605K5201678;

(zz)    One 2018 Honda Rebel 500 Motorcycle, VIN # MLHPC5601J5100071;

(aaa)   One 2019 KTM 790 Motorcycle, VIN # VBKTR3409KM765748;

(bbb)  One 2019 Honda CRF450L Motorcycle, VIN # JH2PD1115KK002373;

5

(ccc)    One 2019 Yamaha YZ125 Motorcycle, VIN # JYACE16C6KA039562;

(ddd)    One 2019 Lamborghini Urus 2019, VIN # ZPBUA1ZL9KLA01398;

(eee)    One 2020 Audi R8, VIN # WUAEEAFX1L7900342; and

(fff)    Net proceeds in the amount of $6,000.00 in lieu of one 2018 Yamaha Raptor 700 all terrain vehicle seized on December 17, 2019, in Deptford, New Jersey.

4.      Plaintiff United States of America brings this action pursuant to 18 U.S.C. § 981(a)(1)(A), which provides for forfeiture of any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1957, or any property traceable to such property.

5.      Plaintiff United States of America also brings this action pursuant to 18 U.S.C. § 2323(a), which provides for forfeiture of any property used, or intended to be used, in any manner or part to commit or facilitate the commission of a violation of 17 U.S.C. § 506 or 18 U.S.C. § 2319, as well as for the forfeiture of any property constituting or derived from any proceeds obtained directly or indirectly as a result of the commission of a violation of 17 U.S.C. § 506 or 18 U.S.C. § 2319.

## JURISDICTION AND VENUE

6.      Plaintiff brings this action in rem in its own right to forfeit and condemn the Defendant Property. This Court has jurisdiction over an action commenced by the United States of America under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

7.      This Court has in rem jurisdiction over the Defendant Property under 28 U.S.C. § 1355(b). Upon the filing of this complaint, the Plaintiff requests that this Court issue

an arrest warrant in rem pursuant to Supplemental Rule G(3)(b), which Plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1) and (2) and 28 U.S.C. § 1395(a) and (b) because a civil proceeding for the forfeiture of property may be prosecuted in any district where the acts giving rise to forfeiture occurred, where the defendant is found, and where the property subject to forfeiture is found.

## THE DEFENDANTS IN REM

9.      The Defendant Currency consists of the property specifically identified at paragraph two, above.

10.     The Defendant Vehicles consist of the property specifically identified at paragraph three, above.

11.     The Defendant Property currently is in the custody of the Federal Bureau of Investigation and will remain within the jurisdiction of this Court during the pendency of this action.

## BASIS FOR FORFEITURE

12.     The Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), because it constitutes property involved in transactions or attempted transactions in violation of 18 U.S.C. § 1957, and is property traceable to such property.

13.     The Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 2323(a), because it is property used, or intended to be used, in any manner or part to commit or facilitate the commission of violations of 17 U.S.C. § 506 and/or 18 U.S.C. § 2319, and is property constituting or derived from proceeds obtained directly or indirectly as a result of the commission of violations of 17 U.S.C. § 506 and/or 18 U.S.C. § 2319.

7

## STATUTORY BACKGROUND

14.     Title 18, United State Code, Section 2319, makes it criminal for any

person to violate 17 U.S.C. § 506(a).

15.     Title 17, United States Code, Section 506(a) provides that:

Any person who willfully infringes a copyright shall be punished as provided
under section 2319 of title 18, if the infringement was committed—

(A) for purposes of commercial advantage or private financial gain;
(B) by the reproduction or distribution, including by electronic means,
during any 180-day period, of 1 or more copies or phonorecords of 1 or
more copyrighted works, which have a total retail value of more than
$1,000; or
(C) by the distribution of a work being prepared for commercial
distribution, by making it available on a computer network accessible to
members of the public, if such person knew or should have known that the
work was intended for commercial distribution.

16.     Title 18, United States Code, Section 1957 provides that "[w]however . . .

knowingly engages or attempts to engage in a monetary transaction in criminally derived

property of a value greater than $10,000 and is derived from specified unlawful activity, shall be

punished." Violations of 18 U.S.C. § 2319 constitute "specified unlawful activity" as defined in

18 U.S.C. § 1956(c)(7).

17.     Title 18, United States Code, Section 2323(a) provides that the following

property is subject to forfeiture to the United States:

(A) Any article, the making or trafficking of which is, prohibited under section
506 of title 17, or section ... 2319 ... of [Title 18].
(B) Any property used, or intended to be used, in any manner or part to commit or
facilitate the commission of an offense referred to in subparagraph (A).

8

(C) Any property constituting or derived from any proceeds obtained directly or indirectly as a result of the commission of an offense referred to in subparagraph (A).

18.     Title 18, United States Code, Section 981(a)(1)(A) states that the following property is subject to forfeiture to the United States: "Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957, or 1960 of this title, or any property traceable to such property."

## FACTS

## Criminal Conduct

19.     From at least in or about March 2016 through in or about November 2019, Bill Omar Carrasquillo (hereinafter "Carrasquillo"), Jesse Daniel Gonzales (hereinafter "Gonzales"), and GT Subscriptions and Hosting Bros Inc, under the operating names including, but not limited to, Gears, Reloaded, and GearsReloaded, illegally sold online television, movies, and sports content without authorization or license, in violation of 17 U.S.C. § 506(a) and 18 U.S.C. § 2319, and engaged in money laundering, in violation of 18 U.S.C. § 1957.

20.     GT Subscriptions, also known as Gears TV Subscriptions ("GT Subscriptions"), was a corporation registered in California, that was owned and/or controlled by Gonzales, and that operated on the internet. GT Subscriptions existed from in or about May 2018 until in or about November of 2019.

21.     GT Subscriptions was the primary company registered with merchant processing account services who were processing payments for customers of Carrasquillo and Gonzales' internet protocol television ("IPTV") services.

9

22.     Hosting Bros Inc was a corporation registered in Pennsylvania, that was owned and/or controlled by Carrasquillo, and that operated in Philadelphia, Pennsylvania. Prior to the creation of GT Subscriptions, Hosting Bros Inc was the name of the primary company registered with the merchant processing account services.

23.     At different times throughout the scheme, processed payments went to bank accounts in the names of GT Subscriptions, Hosting Bros Inc, Gears Reloaded, and, to a lesser extent, ONC Brothers and Reloaded Realty, as well as bank accounts in an assortment of personal names.

24.     Carrasquillo and Gonzales, along with others, provided IPTV services under several different names during the time that they operated illegal video content services, which shall be referred to collectively as "Gears TV and its related entities."

25.     Gears, sometimes referred to as Gears TV, existed from on or about October 1, 2016, through on or about November 20, 2019.

26.     Gears provided live TV for viewing and had a 24/7 feature which offered users access to recordings of video content. This feature shut down on or about May 20, 2017, though it returned later, and was still in operation as late as in or about August 2017.

27.     Streams R US existed from on or about November 2, 2017, through on or about November 2, 2018.

28.     Streams R US provided a movie On Demand-like add-on service. Although this service was briefly shut down during a short period of time in or about late April 2018, it remained in operation until on or about November 2, 2018.

29.     Reloaded, sometimes referred to as Reloaded TV, existed from on or about December 4, 2017, through in or about February 2019.

30.     Reloaded contained the same live channels as Gears TV, and also added a 24-hour catchup feature. There was a brief period of time in or about April 2018 when the catchup feature was shut down. Several days thereafter, Carrasquillo re-released this feature on the Reloaded service.

31.     GearsReloaded, sometimes referred to as GearsReloaded TV, existed from on or about January 28, 2019, through on or about November 20, 2019. During its operations, GearsReloaded provided services similar to Gears, but also included additional features such as an enhanced guide and 48-hour catchup feature, as well as adding hundreds of local channels for viewing.

32.     At all times relevant to this Complaint, Carrasquillo ran and operated Gears TV and its related entities, and resided in Swedesboro, New Jersey and Philadelphia and Huntingdon Valley, Pennsylvania.

33.     Starting in or around at least October 2016, Gonzales assisted Carrasquillo in the day-to-day operations of Gears TV and its related entities, and resided near Los Angeles, California.

34.     From at least in or about October 2016 through on or about November 20, 2019, Carrasquillo and Gonzales operated Gears TV and its related entities, by having the companies subscribe to receive television and video content from cable and satellite television providers, including Comcast Corporation (whose cable television brand is "Xfinity" and is described herein as "Comcast") and Verizon Fios ("Verizon"), as well as to content providers, such as NFL Sunday Ticket, NBA League Pass, MLB Extra Innings, NHL Center Ice, and Soccer content providers.

11

35.     As part of their operations, Carrasquillo and Gonzales had Gears TV and its related entities sell to customers subscriptions to an online video content service, which allowed the customers to access the content of Gears TV and its related entities. Reloaded and GearsReloaded also offered their subscribers additional channels and a "catchup" feature, which allowed the subscribers to access recordings of content that was aired within the previous 24 hours, and later within the previous 48 hours.

36.     Gears TV and its related entities provided customers and subscribers access to copyrighted content without first obtaining the necessary licenses to distribute such material, which constituted an illegal copyright infringement scheme, in violation of 17 U.S.C. § 506(a)(1) and 18 U.S.C. § 2319.

## **Defendant Currency**

37.     Customers could purchase the services of Gears TV and its related entities at a number of different websites, including but not limited to www.gearsservers.com and www.omarsvideos.com. Subscriptions to services such as Gears TV and its related entities were paid monthly with a credit card or other online payment service. Once a customer purchased the service, they were asked to create a username and password, and once an account was created, a customer was then able to log onto the service and access hundreds of live television channels directly from a laptop computer.

38.     Gears TV and its related entities used the following payment processing services to receive subscription payments from their customers during their time in operation: 1.) Stripe, 2.) Bank of America Merchant Services, 3.) Nuvei, Inc. ("Nuvei"), 4.) GreenMoney, and 5.) Worldpay. A payment processing company allows businesses to accept credit card

12

payments over the internet and charges a fee per transaction in order to process the customer's payment. The payment processor then deposits the payment into the business' bank account.

39. On or about June 14, 2019, a merchant application agreement for "Gears Server" with a website of https://gearsservers.com was filed with Nuvei. Gearsservers.com is one of the websites at which customers could purchase subscriptions to the illicit video content service provided by GearsReloaded TV.

40. For a period of approximately one month, that is, from on or about June 14, 2019, until on or about July 16, 2019, Nuvei provided the service of a payment processor for customers of Gears TV and its related entities.

41. On or about July 16, 2019, approximately one month after Gears Server opened its Nuvei account, Nuvei sent an email to Gears Server advising that it had closed the merchant account for Gears Server because of an "unsupported business model."

42. Nuvei processed more than $500,000 in transactions on behalf of Gears Server.

43. At the time that Nuvei terminated its relationship with Gears Server, Nuvei placed a hold on the funds that it had partially processed for Gears Server.

44. On November 20, 2019, federal agents executed a federal seizure warrant executed on Nuvei's Gears Server account and seized the Defendant $542,529.50 in U.S. Currency. This currency constitutes the proceeds of the illegal copyright infringement scheme and is subject to forfeiture to the United States.

45. Prior to the operation of Gears TV and its related entities, Carrasquillo had virtually no legitimate income, other than approximately $550 from Google in 2015, which represented advertising royalties from Carrasquillo's YouTube videos. During the operation of

13

Gears TV and its related entities, Carrasquillo received limited yearly income from YouTube advertising revenue. This money was deposited into a bank account which was not subject to the federal seizure warrant, was not traceable to the seized Defendant Currency, and was not traceable to the purchase of any of the seized Defendant Vehicles.

46.     Gears TV and its related entities received tens of millions of dollars in revenue, i.e., proceeds, during the period of time in which the enterprise operated the illegal video content service. This money then was deposited into business bank accounts in the names of GT Subscriptions, Hosting Bros Inc, Gears Reloaded, ONC Brothers (lesser extent), Reloaded Realty (lesser extent), and an assortment of personal names. Money was then transferred to personal bank accounts of Carrasquillo and Gonzales, some of which was withdrawn in cash by Carrasquillo and Gonzales, and some of which was used by Carrasquillo for the purchase of various assets including vehicles, many of which cost in excess of $10,000.

47.     One end source account for the proceeds generated from the illegal copyright infringement scheme was TD Bank Checking Account # 432-9634011, in the name of Bill Omar Carrasquillo. Funds from other bank accounts associated with Carrasquillo's businesses of Gears TV and its related entities, and from his personal accounts, including other banks accounts at TD Bank, were funneled into this account.

48.     On November 20, 2019, the Federal Bureau of Investigation ("FBI") executed a federal seizure warrant on TD Bank Account # 432-9634011, in the name of Bill Omar Carrasquillo, and seized the Defendant $5,230,918.26 in U.S. Currency, which is traceable to the proceeds of the illegal copyright infringement scheme.

49.     During the execution of federal search and seizure warrants at residences of Carrasquillo on November 20, 2019, agents located and seized various sums of United States

14

currency, including the Defendant $20,020.00 in U.S. Currency seized from the residence on

North Hope Street, Philadelphia, Pennsylvania, the Defendant $1,190.00 in U.S. Currency seized

from the residence on Lorimer Avenue, Huntingdon Valley, Pennsylvania, the Defendant

$20,850.00 in U.S. Currency seized from the interior of a 2020 Bentley Continental, registered to

and in possession of Carrasquillo at his residence, and the Defendant $80,000.00 in U.S.

Currency seized from a 2018 Mercedes Benz AMG, registered to and in possession of

Carrasquillo at his residence. The currency seized during the execution of these search and

seizure warrants is traceable to the proceeds of the illegal copyright infringement scheme.

       50.     Additional funds generated from the illegal copyright infringement

scheme were deposited into Bank of America business checking Account # 3250 9092 0626, in

the name of Jesse Daniel Gonzales Sole Prop DBA GT Subscriptions. Through in or about

November 2019, approximately $17,300,000.00 in illegal proceeds was deposited into this

account from Bank of America Merchant Services, Netcast Server Hosting, and Worldpay. Bank

of America Merchant Services was a payment processor for Gears TV and its related entities,

receiving payments from customers for the illegal online services. Netcast Server Hosting is a

business owned by an individual referred to herein as K.P., who bought and then resold

subscriptions to Carrasquillo's video content service. Worldpay is a United Kingdom based

company that provided payment processing services for Gears TV and its related entities starting

in or about August 2019.

       51.     On November 20, 2019, the FBI seized the Defendant $294,971.33 in U.S.

Currency from Bank of America Account # 3250 9092 0626, which is traceable to proceeds of

the illegal copyright infringement scheme.

52.     Bank of America business savings Account # 3251 0986 9791, in the name of Jesse Daniel Gonzales Sole Prop DBA GT Subscriptions, also was funded with proceeds generated by the illegal online video content service. A large portion of the funds deposited into this account was transferred from Bank of America Account # 3250 9092 0626, referenced above. A total of at least approximately $1,614,107 in proceeds from the illegal copyright infringement scheme were traceable to this account.

53.     On November 20, 2019, the FBI seized the Defendant $446,428.56 in U.S. Currency from Bank of America Account # 3251 0986 9791, which is traceable to proceeds of the illegal copyright infringement scheme.

54.     Another end source location for proceeds generated from the illegal copyright infringement scheme was F&A Federal Credit Union Account # 639700, in the name of Jesse Gonzales and Jennifer Gonzales. At least $173,250.00 in proceeds from the scheme were traceable to this account, including funds from Bank of America Account # 3251 0986 9791, in the name of Jesse Daniel Gonzales Sole Prop DBA GT Subscriptions, described above.

55.     On November 20, 2019, agents seized the Defendant $173,250.00 in U.S. currency from F&A Federal Credit Union Account # 639700 pursuant to the federal seizure warrant. The Defendant $173,250.00 in U.S. currency is traceable to proceeds of the illegal copyright infringement scheme.

56.     On November 20, 2019, the FBI executed a federal search and seizure warrant at the residence of Jesse and Jennifer Gonzales on Terradell Street, Pico Rivera, California. During the execution of these warrant, agents located and seized several sums of U. S. currency as property traceable to proceeds of the illegal copyright infringement scheme. In particular, agents seized $62,920 in U. S. Currency that was located in a bedroom of the

16

Terradell Street residence, which consisted of approximately $1,220 found on a nightstand, approximately $10,000 found in a dresser, and approximately $51,700 found in a safe.

57.     During the 12-month period prior to the execution of the search and seizure warrants, between on or about November 20, 2018, and on or about August 1, 2019, approximately $164,150.00 in cash withdrawals were made from Bank of America Business Checking Account # 3250 9092 0626, in the name of Jesse Daniel Gonzales Sole Prop DBA GT Subscriptions, described above. Jesse Gonzalez was the sole signatory of this bank account. More than $14 million in illegal copyright infringement scheme proceeds were deposited into this account.

58.     During the years of 2017 and 2018, the only other cash withdrawals observed from bank accounts under the control of Jesse and/or Jennifer Gonzales, totaled approximately $22,000.

59.     The Defendant $62,920.00 in U.S. Currency seized from Gonzales' residence is traceable to the proceeds of the illegal copyright infringement scheme.

### Defendant Vehicles

60.     During the time period of the illegal copyright infringement scheme described above, Carrasquillo purchased a number of luxury cars, motorcycles, trailers, and recreational vehicles.

61.     Carrasquillo purchased all of the Defendant Vehicles during the operation of the illegal copyright infringement scheme.

62.     Carrasquillo purchased all of the Defendant Vehicles with proceeds of the illegal copyright infringement scheme.

17

63.     More than $11 million in proceeds from the illegal copyright infringement scheme flowed through Carrasquillo's account (No. x5230) at Bank of America. No monies other than those having been generated by the scheme, or those traceable thereto, were deposited into Bank of America Account # x5230.

64.     Carrasquillo used the illegal proceeds deposited into Bank of America Account # x5230 to purchase a number of vehicles, among other things, during this time, including, but not limited to, the following:

a.  On or about October 2, 2018, a cashier's check in the amount of $235,429.00 was drawn on Bank of America Account # x5230, made payable to Auto Exotica, for the purchase of the Defendant 2015 Lamborghini Huracan Coupe (VIN # ZHWUC1ZF4FLA02602).

b.  On or about November 18, 2018, a cashier's check in the amount of $233,245.09 was drawn on Bank of America Account # x5230, made payable to FC Kerbeck, for the purchase of the Defendant 2019 Lamborghini Urus (VIN # ZPBUA1ZL9KLA01398).

c.  On or about February 26, 2019, a check in the amount of $52,270.84 was drawn on Bank of America Account # x5230, made payable to Reedman Toll Chrysler Dodge Jeep Ram of Jenkintown, for the purchase of the Defendant 2019 Jeep Wrangler (VIN # 1C4HJXEG6KW570874).

d.  On or about May 9, 2019, a check in the amount of $65,019.70 was drawn on Bank of America Account # x5230, made payable to Reedman Toll of Jenkintown, for the purchase of the Defendant 2020 Jeep Gladiator (VIN # 1C6JJTBG2LL101726).

18

65.     Illegal copyright infringement scheme proceeds from other accounts where Carrasquillo deposited funds generated from Gears TV and its related entities also were used to purchase a number of other vehicles. In particular, vehicle purchases using scheme proceeds from the illegal copyright infringement scheme are traceable to funds deposited into TD Bank account ending in x4218, in the name of Bill Omar Carrasquillo, and TD Bank account ending in x0356, in the name of Gears Reloaded.

66.     For example, funds traceable to the illegal copyright infringement scheme were used to purchase a number of vehicles including, but not limited to, the following:

    a.   On or about June 12, 2019, a cashier's check in the amount of $85,000 drawn on TD Bank Account # x4218 was used to purchase the Defendant 2019 Audi A7 (VIN # WAUS2AF24KN105368).

    b.   On or about June 26, 2019, a cashier's check in the amount of $37,605 drawn on TD Bank Account # x4218 and made payable to Ace Ford was used to purchase the Defendant 2019 Ford Mustang (VIN # 1FA6P8TH2K5180423).

    c.   On or about August 3, 2019, a cashier's check in the amount of $93,000 drawn on TD Bank Account # x0356 and made payable to DCH Freehold Toyota was used to purchase the Defendant 2020 Toyota Supra (VIN # WZ1DB4C05LW022111).

67.     Proceeds of the illegal copyright infringement scheme were in these accounts at the time that the cashier's checks, or other funds, were used to purchase the vehicles referenced above in paragraphs 64 and 66, above.

68.     When purchasing these vehicles with illegal proceeds, Carrasquillo knowingly engaged in monetary transactions in criminally derived property of a value greater

than $10,000 and the monetary transactions were in fact derived from specified unlawful activity, in violation of 18 U.S.C. § 1957.

69.     At the time of seizure, Carrasquillo had an ownership and/or possessory interest in all of the Defendant Vehicles. The Defendant Vehicles were located on, or registered to properties owned by Carrasquillo, specifically the Lorimer Drive or Fox Chase Court addresses. Many of the Defendant Vehicles also were featured on YouTube videos created by and for Carrasquillo.

70.     Carrasquillo used funds traceable to the violations of 17 U.S.C. § 506 and 18 U.S.C. § 2319 to purchase the Defendant Vehicles and engaged in money laundering in violation of 18 U.S.C. § 1957 when purchasing many of the Defendant Vehicles.

## CLAIM FOR FORFEITURE

71.     By reasons of the foregoing, there is reason to believe that the Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), because it constitutes property involved in transactions or attempted transactions in violation of 18 U.S.C. § 1957, and is property traceable to such property, and pursuant to 18 U.S.C. § 2323(a), because it is property used, or intended to be used, in any manner or part to commit or facilitate the commission of violations of 17 U.S.C. § 506 and/or 18 U.S.C. § 2319 and property constituting or derived from proceeds obtained directly or indirectly as a result of the commission of violations of 17 U.S.C. § 506 and/or 18 U.S.C. § 2319.

WHEREFORE, the plaintiff, United States of America, requests:

1.     The Defendant Property be proceeded against according to the law and the rules of this Court, and that due notice be given to all the interested parties to appear and show cause why forfeiture should not be decreed.

2.      The Court, for the reasons set forth herein, adjudge and decree that the Defendant Property be forfeited to the United States of America and disposed of in accordance with existing laws, together with costs, and for such other relief as this Court deems proper and just.

Respectfully submitted,

JENNIFER ARBITTIER WILLIAMS
Acting United States Attorney


    */s/ Sarah L. Grieb*
SARAH L. GRIEB
Assistant United States Attorney
Chief, Asset Recovery & Financial Litigation Unit


    */s/ David Weisberg*
DAVID WEISBERG
Special Assistant United States Attorney

Date: April 14, 2021.

## V E R I F I C A T I O N

I, Matthew McKenna, being of legal age, verifies and, pursuant to Title 28, United States Code, Section 1746(2), declares and states as follows:

1.      I am a Special Agent with the Internal Revenue Service, Philadelphia Division, and I am assigned to the investigation in this case.

2.      I have reviewed the foregoing Complaint for Forfeiture *in Rem* and know the contents thereof, and that the matters contained in the Complaint are true to my own knowledge.

3.      The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on April __14__, 2021.

MATTHEW McKENNA
Special Agent
Internal Revenue Service